WILLIAM E. TUTTLE, JR., COMMISSIONER OF BANKING AND INSURANCE OF THE STATE OF NEW JERSEY, complainant,

*v.*

STATE MUTUAL LIABILITY INSURANCE COMPANY, defendant.

[Decided October 28th, 1924.]

Accounting—Receiver's Intermediate Account—Objections Filed, and Reference to Masters Made—Account Open to Criticism Because Accountant Has Charged Himself Only With Money and Physical Assets; Because He Should Include Inventory, Which Should Include Intangible Assets and Choses in Action; Because He Should Give Details of Sales of Bonds and Coupons—Vouchers Should Accompany Account—Separate Account of Fund Formerly in Insurance Commissioner's Hands—Receiver Must File Report as well as Account —Other Criticisms Made.

On order to show cause for confirmation of receiver's intermediate account, &c.

*Mr. William Newcorn,* for the receiver.

*Mr. George F. Seymour, Jr., Mr. Charles A. Cogan, Mr. Charles A. Woodruff, Messrs. Grosken & Moriarty, Mr. E. M. Carroll, pro se,* for divers creditors and policy holders objecting.

BUCHANAN, V. C.

The receiver of the defendant company has filed an intermediate account, on which an order was made upon the creditors and policyholders to show cause why the "report" of the receiver should not be approved, his "accounts" allowed, partial allowances for compensation made to receiver and counsel, and distribution of the balance made. This order to show cause was served in the usual way, together

with a notice by the receiver that he would ask an allowance of $5,000 for himself and $5,000 for his counsel. On the return day counsel appeared for a number of objecting respondents, and an order was made for continuance and the filing of written objections in the *interim*. A number of such objections were filed.

The account is one which should, in any event, go to a special master for audit and report under rule 252. It covers such a period and amounts of such size, and has so many items as to require a more comprehensive examination than can be given by the court on an order to show cause, and the numerous parties interested, whose interests are severally small, are entitled to more than a *pro forma* examination, irrespective of the appearance of counsel and special objection in their behalf. Moreover, the order to show cause (copies of which were sent to the creditors and policy holders), improvidently recites that the receiver has presented an audit of his accounts. On this, perhaps, the creditors have relied; in fact, no audit was presented or has been made, nor can such audit be made by the court or anyone else; no vouchers have been presented for any items. The account is further clearly open to objection in at least some of the particulars pressed by the objecting respondents.

Such a reference will therefore be made. The special master can scrutinize and audit the account and examine the receiver and such other persons as he deems proper, on notice to the counsel of the objecting creditors.

Mention may be here made of some of the points in which the account, as it now stands, is open to criticism, argument having been had on the return day as to some of them.

The account is designated in the receiver's verification as an account only of "all moneys" that have come to his hand; in the accompanying petition it is termed an account of all moneys, rights, credits and effects "that have come into his hands and possession." Section 56 of the Insurance act makes applicable the provisions of the Corporation act as to receiver's duties. Under section 74 of the Corporation act it would seem clear that the receiver should charge himself,

not only with all moneys and physical assets which actually came into his possession, but also all assets of any kind that have come into his control. See, also, chancery rule 251.

The receiver has never filed any inventory in this cause, and this is the first and only account he has filed, although he has been over three years in office. The present account is a mere cash account, except for the item of Liberty bonds. If an inventory had been filed, the account could use it as a basis, but, in the absence of such inventory, this account should include such inventory, and should include not only the physical assets but choses in action, and other intangible assets as well. Section 74 of the Corporation act specifically mentions "debts due" to the corporation.

It seems clear, from what transpired at the argument, that there are a number of such items, including amounts due from policy holders for unpaid premiums (the so-called "premium notes") ; the amounts due for unpaid assessments by the receiver; the amount due from the New Jersey Indemnity Company, or the New Jersey Indemnity Exchange ; the amount in the hands of the special receiver in *New Jersey Indemnity Co. v. State Mutual Liability Insurance Co.*, claimed by the receiver of the state mutual company, and other items of this kind. The receiver should charge himself with such items, and give the face value as well as the estimated value. (The order for assessment against the policy holders, of course, did not operate to discharge policy holders from liability for non-payment of primary premiums.) It is also charged that there is a claim against the department of banking and insurance for the loss of interest during the year 1920.

The account does not give the details of the sales of bonds and coupons—what coupons were sold, their dates of maturity and dates of sale. In the absence of such details it is impossible to determine whether proper sale prices were obtained. There should also be a specification of what coupons the receiver received with the bonds.

There should, of course, be a full compliance with chancery rule 251.

In addition to the vouchering and proof of the fact of expenditures, there should be inquiry by the master as to the propriety and reasonableness where his judgment so prompts. Such, for instance, would be indicated as to the items of office rent, payment of salaries to assistants, and telephone service. The receivership has, of course, been complicated—there were voluminous records of the defunct company, much investigation and correspondence was necessary, and there has been considerable litigation. Expenditure along the lines mentioned was undoubtedly required, but it is the duty of the court to the creditors to satisfy itself that such expenditures, so far as they are to be charged against the funds which would otherwise go to the creditors, have not exceeded the needs or reasonable proprieties of the case as to amount and duration of continuance. Some storage was required for the company's records, but has it been necessary to have a $50 per month office for all this time, or maintenance assistants and separate telephone service? Furthermore, it may be questioned whether some of these expenditures are not of a nature for which it is contemplated that compensation is made in and by the allowance of fee to the receiver, rather than as specific disbursements, and whether amounts paid for serving notices will be duplicated in the taxed costs. See *Steelman* v. *Moore Bros. Glass Co., 93 N. J. Eq. 533* (at *p. 536*). I do not mean to limit the special master to the items specified, I simply mention those as to which argument has been had and which have occurred to me on inspection of the account.

Another thing which occurs to me is that inasmuch as certain creditors claim lien or preference as to the fund or securities formerly held by the banking and insurance commissioner under *P. L. 1920 ch. 213,* and especially in view of the conclusions heretofore filed in this cause (not reported) as to the validity, or probable validity, of such preferred claims, there should be a separate accounting in this account as to such fund—that is to say, a segregation of the particular items of charge and discharge applicable to that fund.

There is appended to the account a list of claims allowed and disallowed by the receiver. This, of course, is no part of his account and has nothing directly to do with it. It is a matter as to which he should file a report. The order to show cause recites that he has filed a report, but I find no report but this list, and the document is endorsed only as an "account."

The receiver should, of course, file such a report, but it should be more ample than is made by this list—especially in view of the fact that some distribution was contemplated. I am inclined to think that it would be much better practice for the account and the report to be separated, and separately endorsed and filed.

Considering this list as a report, and as a report upon which a determination as to distribution is asked, it classifies the claims as "allowed by the receiver," "disallowed by the receiver" and "contingent." What "contingent" means does not appear.

It may mean that these claims have been allowed by the receiver as contingent claims. Certainly, if any claims have been allowed as contingent claims, they should be so reported by the receiver. In such case it should also be reported as to the nature and circumstances of the contingencies.

It may mean that these claims may develop or be allowed on certain contingencies, as, for instance, if issue or suit be pending in a law court, under section 77 of the Corporation act, or *P. L. 1921 ch. 225.* If so, the circumstances and particulars should be stated.

Moreover, it should appear whether or not the receiver has notified the claimants of his determination, under section 76 of the Corporation act, and, if so, on what dates. Indeed, it is the practice, the reason for which is evident, to take orders limiting appeals and barring appeals. *Cf. Dick. Supp. 39, 40.* Such orders should be taken by the receiver in the present case.

Again, concededly, certain of the creditors claim lien or right of priority of payment, either as to the total assets or a particular portion thereof. These should be separately

set out in the report, with a succinct statement of the nature or facts of the several classes of such preference claims, the respective determinations of the receiver in regard to the claims of preference, his reasons, and whether or not such claimants have been notified of such determination, and, if so, how and when.

An order will be made referring the account to a special master, as hereinbefore indicated, and directing him to report on a day certain; also directing the receiver to file a new and separate report conforming to the requirements set forth in these conclusions, such report to be filed and presented to me on a day certain, say about two weeks hence. It is obvious that no order as to allowances or distribution can be made at present. Let the order provide for the continuation of the hearing on the present order to show cause, so far as it concerns the receiver's report as to claims filed and his actions thereon, to a day certain, say a week subsequent to the date for the filing of such new report, and for the continuance of the hearing as to all other phases of the present order to show cause to a day certain, say two weeks subsequent to the date for the filing of the special master's report; let the order also provide that it be served by the receiver on the several solicitors who appeared at this hearing. On the filing of the new receiver's report an order limiting appeals may be had.

Certain of the objections filed by Edward M. Carroll, appearing *pro se,* are, in fact, objections to certain of the receiver's determinations or allowances of claims. They amount, essentially, to appeals from the receiver's decisions, under section 78 of the Corporation act, although some of them simply state that "more information is desired." If Mr. Carroll desires to press these objections as appeals, he may present the matter to the court on the date to which this hearing is continued so far as concerns the receiver's report as to claims, and obtain an order that such objections be deemed to be appeals, and providing for the hearing and determination thereof. The expense of such appeals must, of course, be borne, in the first instance, by the appellant.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Since the foregoing was written the receiver has filed a "supplemental report to intermediate account," under leave granted at the hearing. This supplies some, but by no means all, of the deficiencies mentioned. It will be referred to the special master with the original account and report.